## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is hereby entered into by and between Stephanie Bloodworth ("Plaintiff"), and Entegra Bank ("Defendant"), as of the last date set forth below. Plaintiff and Defendant are each referred to herein individually as a "Party," and collectively, as the "Parties." As used herein, the phrases "this Agreement," "hereto," "hereunder," and phrases of like import shall mean this Agreement between Plaintiff and Defendant. All capitalized terms shall have the meanings ascribed to them in the Agreement.

WHEREAS, Plaintiff was employed by Defendant from May 1, 2015, to February 18, 2016; and

WHEREAS, on April 20, 2016, Plaintiff, by and through her attorneys, filed a Complaint for Damages against Defendant in the United States District Court for the Northern District of Georgia, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay her overtime at the rate of time-and-one-half for all hours worked in excess of forty (40) per workweek, which matter was captioned *Stephanie Bloodworth v. Entegra Bank*, Case No. 1:16-cv-01279-TWT (the "Litigation"); and

WHEREAS, Defendant disputes the amount of compensation claimed by and allegedly owed to Plaintiff; and

WHEREAS, the Parties desire to finally and forever resolve all disputed matters between them existing as of the date of this Agreement, whether or not raised in the Litigation; and

WHEREAS, the Parties have entered into this Agreement to bring about such resolution;

NOW, THEREFORE, the Parties, with the intent of totally ending and forever foreclosing all matters or potential matters in dispute between the Parties up to the time of this Agreement, thereby assuring peace between the Parties based on such matters, in return for the mutual promises and consideration contained herein, the sufficiency of which is expressly acknowledged, agree as follows:

1. **Settlement Amount.** Provided that Plaintiff executes this Agreement, and that Plaintiff and her counsel first provides Defendant with a fully-executed W-9, Defendant shall mail or deliver the gross sum of Twenty Eight Thousand Two Hundred Fifty and No/100ths Dollars ($28,250.00), less applicable taxes (the "Amount") to V. Severin Roberts, Barrett & Farahany, LLP, 1100 Peachtree Street, NE, Suite 500, Atlanta, Georgia 30309, within ten (10) days of the Court approving this settlement agreement. The Amount shall be payable as follows:

   (a) Check #1 to Plaintiff in the gross amount of $16,475.00, minus relevant applicable withholdings and deductions, for unpaid wages;

   (b) Check #2 to Barrett & Farahany, LLP in the amount of $11,775.00 in consideration of attorneys' fees and costs.

The Parties agree that the Amount shall constitute full, final, and complete settlement of any wages, damages, monies, liabilities, or other obligations claimed to be owed to Plaintiff by Defendant. Plaintiff understands that her retention of the Amount is expressly conditioned upon her fulfillment of the promises herein.

2. **General Release.** In consideration of the foregoing, Plaintiff does hereby knowingly and voluntarily release and forever discharge, both jointly and severally, Defendant, its corporate subsidiaries, parents, and affiliates, and their current and former partners, owners, shareholders, directors, officers, managers, employees, attorneys, consultants, contractors, servants, agents and spouses, together with their predecessors, successors, heirs and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown, which Plaintiff ever had, now has, or may or might in the future have against Releasees, arising out of events or occurrences arising at or before the moment Plaintiff signs this Agreement, including, but not limited to: (i) those claims which were or could have been raised in the Litigation; (ii) those claims arising under the FLSA; (iii) those claims arising under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended by the Older Workers Benefit Protection Act ("OWBPA"); (iv) those claims arising under Title VII of the Civil Rights Act of 1964; (v) those claims arising under 42 U.S.C. § 1981; (vi) those claims arising under the Civil Rights Act of 1991; (vii) those claims arising under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008; (viii) those claims arising under the Rehabilitation Act of 1973; (ix) those claims arising under the Equal Pay Act of 1963; (x) those claims arising under the Genetic Information Nondiscrimination Act of 2008; (xi) those claims arising under the Family and Medical Leave Act of 1993 ("FMLA"); (xii) those claims arising under the Employee Retirement Income Security Act of 1974; (xiii) those claims arising under the National Labor Relations Act, as amended by the Labor-Management Relations Act ("NLRA"); (xiv) those claims arising under the Worker Adjustment and Retraining Notification Act of 1988; (xv) those claims arising under the Consolidated Omnibus Budget Reconciliation Act of 1985; (xvi) those claims arising under any other federal, state or local fair employment practices or wage and hour statute, or any ordinance promulgated by any county, municipality, or other state or federal subdivision, including but not limited to the Georgia Minimum Wage Law, O.C.G.A. § 34-4-1 et seq., Georgia Equal Employment for Persons With Disabilities Code, O.C.G.A. § 34-6A-1 et seq., O.C.G.A. §§ 33-24-21.1, 34-1-2, 34-1-3, 34-5-1 et seq., and 38-2-279; (xvii) those claims for wrongful discharge, retaliatory discharge, discrimination, harassment, or discharge in violation of public policy; (xviii) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xix) those claims for breach of contract (express or implied, in fact or in law, oral or written), or any duty or implied covenant of good faith and fair dealing; (xx) those claims for breach of fiduciary duty, fraud, misrepresentation, invasion of privacy, libel, slander, defamation or tortious conduct of any kind; (xxi) those claims for interference with actual or prospective contractual relationships, business relationships, or employment relationships; (xxii) those claims arising from or in reliance upon any statute, regulation, rule or ordinance (local, state or federal); (xxiii) any and all other claims arising under law or in equity; and (xxiv) any and all other claims which Plaintiff ever had, now has, or may or might in the future have arising by reason of or in any way connected with any relationship which may have existed prior to or on the date hereof between her and Defendant, the termination of that relationship, and/or the decision to terminate that

2

relationship; provided, however, that this Agreement does not waive rights or claims that may arise after the date the Agreement is executed.

    (a) Without limiting the generality of the foregoing, Plaintiff acknowledges and covenants that, in consideration for the agreements and commitments set forth herein, she has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to her from Releasees, including, without limitation, reinstatement, reemployment, back pay, front pay, benefits, seniority, recovery of attorney's fees and costs incurred, injunctive relief, actual damages, punitive damages, liquidated damages, exemplary damages, nominal damages, contract or tort damages of any type, or any other legal or equitable relief under either federal or state statutory or common law.

    (b) Plaintiff hereby certifies that as a result of the payment to her of the Amount, she has received all wages, compensation and remuneration due her under the FLSA; and acknowledges that she is not aware of any facts that would state claims by her against Releasees arising under the FMLA or NLRA.

    (c) Plaintiff represents and warrants that she has not filed or assigned or transferred to any other person any claim released in this Section 2. In the event of such filing, assignment or transfer, Plaintiff agrees to withdraw any such charge within seven (7) days after Defendant's execution of this Agreement, and to indemnify and hold harmless Releasees from and against any liability, loss, cost (including attorney's fees), expense, settlement, or judgment arising out of such filing, assignment, or transfer.

3. **Covenant Not to Sue.** In further consideration of the foregoing, Plaintiff covenants not to sue Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by her herein. Plaintiff understands and acknowledges that after signing this Agreement, she may not proceed against any Releasee with respect to or on account of any of the matters referred to in it; provided, however, that this covenant does not affect Plaintiff's right to test the knowing and voluntary nature of the Agreement in court under the OWBPA; provided further, that this Agreement does not prohibit Plaintiff from filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or any local or state agency, although Plaintiff agrees and acknowledges that she has waived, and shall not collect, any monetary benefits, including but not limited to attorney's fees, if the EEOC or state or local agency pursues a suit on her behalf against any Releasee. In the event that Plaintiff prevails in any claim brought against any Releasee arising under the ADEA, the Parties agree that the Releasee shall be entitled to offset all amounts paid under this Agreement against any amount recovered by Plaintiff.

4. **OWBPA Acknowledgments.** Plaintiff acknowledges and agrees that the consideration being provided to her in exchange for this Agreement is in addition to anything of value to which she already was entitled. Plaintiff is hereby advised in writing to consult with an

3

attorney prior to executing the Agreement. Plaintiff acknowledges and agrees that she had a period of twenty-one (21) days within which to consider her waiver and release of ADEA claims set forth in Section 2(iii) of this Agreement; that for a period of seven (7) days following her execution of this Agreement, she may revoke her waiver and release of ADEA claims set forth in Section 2(iii) by mailing written notice of her revocation to Defendant c/o Matthew T. Gomes, Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, 3344 Peachtree Road, NE, Suite 2400, Atlanta, Georgia 30326; and that her waiver and release of ADEA claims set forth in Section 2(iii) shall not become effective or enforceable until the first day after this revocation period has expired and the case is dismissed or withdrawn whichever occurs later (the "Effective Date"). With the exception of Section 2(iii), all other terms, conditions, waivers and releases set forth in this Agreement shall be effective as of the date Plaintiff executes this Agreement. Plaintiff acknowledges and agrees that she has read and understands all the terms and conditions of the Agreement; that she was not coerced, pressured or forced in any way by Defendant or anyone else to accept the terms of this Agreement; and that she is entering into this Agreement knowingly and voluntarily, and without promise or benefit other than as set forth herein.

5.  **FLSA Acknowledgments.** Plaintiff acknowledges and agrees that (a) there is a genuine dispute between the Parties regarding the compensation owed to Plaintiff; (b) she is aware of her rights under the FLSA; (c) she is represented by counsel; and (c) Plaintiff was not disadvantaged by unequal bargaining power. Plaintiff acknowledges and agrees that she has read and understands all the terms and conditions of the Agreement; that she was not coerced, pressured or forced in any way by Defendant or anyone else to accept the terms of this Agreement; and that she is entering into this Agreement knowingly and voluntarily, and without promise or benefit other than as set forth herein.

6.  **Waiver of Reemployment.** Plaintiff hereby waives reinstatement to Defendant and covenants that she will never knowingly apply for or accept employment with Defendant or its corporate subsidiaries, parents, or affiliates. Plaintiff acknowledges and agrees that in the event that she applies for employment with any of these entities, such application shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for any refusal to hire her. Plaintiff further acknowledges and agrees that in the event that she is mistakenly rehired by any of these entities, such acceptance of employment shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for her termination, without cause, without notice, and without recourse available to her against these entities. Plaintiff further agrees that she will not assert, file or prosecute any charge or claim against Defendant or its corporate subsidiaries, parents, or affiliates based on this Section.

7.  **Non-Disparagement.** Plaintiff agrees that except as may be required by law, henceforth she shall cease and refrain from making any disparaging or defamatory remarks or comments regarding Releasees, expressly or by implication, including but not limited to any Releasee's personal or business dealings and reputations. The Parties agree and acknowledge that this prohibits even truthful statements that put another in a bad light.

8.  **Confidentiality.** Plaintiff agrees that she will not discuss, reveal, or comment upon with any person the fact of settlement, the settlement terms, this Agreement or the Amount, except (a) to her spouse; (b) to her counsel, accountant(s), and/or tax preparer(s); (c) as necessary to

4

enforce the terms of this Agreement; or (d) as may be required by law. Plaintiff further agrees that she will inform anyone to whom the terms of this Agreement are disclosed of the confidentiality requirements contained herein. Plaintiff agrees that if she is asked about the status or resolution of any disputes between herself and Releasees, she shall disclose only that "the matter has been resolved."

9.  **Court Approval of Settlement.** In consideration of the foregoing, the Parties shall cause to be filed in the Litigation a Joint Motion for Approval of Settlement Agreement as Stipulated Final Judgment in the form attached hereto as Exhibit 1 no later than seven (7) days after the date on which the Plaintiff signs this Agreement. The parties agree that the United States District Court for the Northern District of Georgia shall retain continuing jurisdiction to enforce the terms and conditions of this settlement.

10. **Denial of Wrongdoing.** It is further understood and agreed that the payment and benefits conferred herein are not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

11. **Non-Admission.** This Agreement is entered into solely in order to compromise and settle disputed claims, without any acquiescence, acknowledgement, or agreement by any Party as to the merit of any actions, causes of action, suits, debts, dues, sums of money, accounts, damages, expenses, attorney's fees, costs, punitive damages, penalties, judgments, claims or demands released herein. Neither this Agreement nor any part thereof shall be, or be used as, evidence or an admission of liability by anyone, at any time, for any purpose.

12. **Basis for Settlement.** Each Party acknowledges and agrees that the terms of this Agreement are, and have been agreed to, for their mutual convenience, in part to avoid the expense, distraction, risk and uncertainty of further litigation, and after considering the risks of litigation and the circumstances of their respective businesses. Each Party also acknowledges and agrees that it has relied entirely on its own judgment, belief and knowledge (including its judgment, belief and knowledge with respect to the foregoing, the extent and duration of the claimed damages in the case, and the value of settling the case at this time) and the advice and recommendations of her or its own independently selected counsel, and, accordingly, except as set forth herein, neither she nor it, nor anyone acting on her or its behalf shall (or shall have the right to) deny or challenge the validity of this Agreement or any of the obligations of the Parties hereunder.

13. **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, administrators, conservators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through them based or founded upon any of the claims released herein.

14. **Severability.** In the event that any term, covenant, condition, agreement, section or provision hereof shall be deemed invalid or unenforceable, this Agreement shall not terminate or be deemed void or voidable, but shall continue in full force and effect and there shall be substituted for such stricken provision a like but legal and enforceable provision which most nearly accomplishes the intention of the Parties.

5

15. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties regarding the subject matter set forth herein, including but not limited to Plaintiff's employment with Defendant, and all prior agreements, contracts, statements, understandings, negotiations, representations or warranties regarding such subject matters are expressly merged herein. Except as set forth in this Agreement, no Party has relied upon the representations of any other Party to induce them to enter into this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of the Parties.

16. **Waiver.** Failure by any Party to insist upon strict performance of any provision herein by any other Party shall not be deemed a waiver by such Party of her or its rights or remedies or a waiver by it of any subsequent default by such other Party, and no waiver shall be effective unless it is in writing and duly executed by the Party entitled to enforce the provision being waived.

17. **Prevailing Party Attorney's Fees.** In any action to enforce the terms of this Agreement, the prevailing Party shall be entitled to recover her or its reasonable attorney's fees in addition to costs of suit from any adverse Party.

18. **Construction.** This Agreement has been negotiated by the Parties and shall be interpreted fairly in accordance with its terms and without any construction in favor of or against any of the Parties. The interpretation and construction of this Agreement shall be subject to the following provisions: (a) words importing the singular meaning include where the context so admits the plural meaning and vice versa; (b) words connoting gender include other genders and all such words shall be construed interchangeably in that manner; (c) the terms "and" and "or" as used herein shall mean both the conjunctive and the disjunctive, so that one word or the other may be taken accordingly as the one or the other (i.e., "and/or"); (d) the word "any" shall mean "all" or "one out of several"; (e) the words "include", "includes" and "including" are to be construed as if they were immediately followed by the words "without limitation"; and (f) the captions and headings used in this Agreement have been inserted for convenience of reference only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement.

19. **Counterparts.** This Agreement may be executed simultaneously in one or more counterparts, any of which shall be deemed an original, and all of which together shall constitute one and the same instrument, notwithstanding that all Parties are not a signatory to the original or the same counterpart. Facsimile or electronic signatures shall be treated as originals.

STEPHANIE BLOODWORTH

_S. Bloodworth_
Signature

_7/17/16_
Date

ENTEGRA BANK

_Holly R Cloninger_
Signature

_Holly R Cloninger_
Print Name

_SVP_
Title

_7/25/16_
Date

7